CONTINENTAL CASUALTY COMPANY v HURON VALLEY
NATIONAL BANK

Docket No. 77-1893. Submitted January 10, 1978, at Detroit.—Decided
August 22, 1978.

David Roth, a bookkeeper employed by the Electric Apparatus
Company, filed an assumed name certificate as "David Roth d/
b/a Electric Apparatus" and opened an account in that name
at defendant Huron Valley National Bank. Then Mr. Roth
intercepted checks payable to Electric Apparatus Company,
indorsed and deposited them in the account at defendant bank.
Plaintiff Continental Casualty Company paid Electric Appara-
tus Company for its loss after Mr. Roth's scheme was discov-
ered and then filed suit against defendant bank for conversion
of the checks, claiming title to the checks as assignee and
subrogee of Electric Apparatus Company. The Washtenaw Cir-
cuit Court, William F. Ager, Jr., J., granted defendant's motion
for accelerated judgment on the basis that plaintiff's claim is
barred by the three-year statute of limitations. Plaintiff ap-
peals. *Held:*

Where a check is paid on a forged indorsement the proper
statute of limitations is the three-year limitation on actions for
damages for injury to property and it begins to run at the time
the check is paid; where there is no express contract or express
promise and defendant's liability, if any, is implied by law, an
action for damages for injury to property, such as this, is
subject to the three-year statute regardless of whether the
action is labeled as one in tort or implied contract.

Affirmed.

M. J. KELLY, J., dissented. He would hold that recovery might
be had under an implied contract theory to which the six-year
statute of limitations is applicable.

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am Jur 2d, Conversion §§ 143, 146.
  51 Am Jur 2d, Limitation of Actions §§ 89, 91, 135.
[2] 12 Am Jur 2d, Bills and Notes §§ 1038–1043.
[3] 12 Am Jur 2d, Bills and Notes §§ 1044–1056.
[4] 51 Am Jur 2d, Limitation of Actions § 101.

Opinion of the Court

1. Limitation of Actions—Statutes—Negotiable Instruments—Checks—Conversion—Injury to Property.

The payee-owner of a check has suffered an injury to property within the meaning of the statute limiting actions for damages for injuries to property to three years where the check is converted (MCL 600.5805[7]; MSA 27A.5805[7]).

2. Limitation of Actions—Statutes—Contract—Implied Contract—Injury to Property.

An action to recover for the loss of a check is an action for injury to persons or property, subject to the three-year statute of limitations regardless of whether the action is labeled as one in tort or implied contract, where the check is converted and where there is no express contract or express promise and defendant's liability, if any, is implied by law (MCL 600.5805[7]; MSA 27A.5805[7]).

3. Limitation of Actions—Statutes—Conversion—Negotiable Instruments—Checks—Time Statute Begins to Run.

The statute limiting actions for conversion of a check where the check is paid on a forged indorsement begins to run when the check is paid, not when the forgery or conversion is discovered (MCL 600.5805[7]; MSA 27A.5805[7]).

Dissent by M. J. Kelly, J.

4. Limitation of Actions—Statutes—Negotiable Instruments—Checks—Collecting Bank—Implied Contract.

*An assignee and subrogee of the payee-owner of checks paid on forged indorsements who sues the collecting bank for the value of the checks may recover on an implied contract theory, in which case a six-year statute of limitations is applicable (MCL 600.5813; MSA 27A.5813).*

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.,* for plaintiff.

*Rollins, White & Rollins,* for defendant.

Before: Allen, P. J., and D. E. Holbrook, Jr. and M. J. Kelly, JJ.

D. E. Holbrook, Jr., J. The major issue in this

case is what statute of limitations applies when a check is converted?

There are no factual disputes and plaintiff appeals the lower court's grant of accelerated judgment in favor of defendant bank. Plaintiff Continental Casualty is the assignee and subrogee of the now-bankrupt Electric Apparatus Company which was located in Livingston County during its years of operation. This action arises out of a scheme of a bookkeeper, David Roth, who was employed by Electric Apparatus Company. In 1970 in nearby Washtenaw County Mr. Roth filed an assumed name certificate as "David Roth d/b/a Electric Apparatus" and opened an account in the name of David Roth d/b/a Electric Apparatus at defendant Huron Valley National Bank. For almost two years, Mr. Roth intercepted checks made payable to Electric Apparatus Company, indorsed them and deposited them in the account at defendant bank.

Subsequently Electric Apparatus Company sustained financial losses and was placed in bankruptcy in 1972 and operated under a receiver until 1974. In 1974, Roth's scheme was discovered and plaintiff insurance company paid Electric Apparatus Company pursuant to its fidelity bond. Plaintiff, as assignee and subrogee, brought suit for conversion against the bank in January 1976.

The lower court concluded that plaintiff's conversion action was one for "injury to property" and therefore barred by the three-year statute of limitations contained in MCL 600.5805(7); MSA 27A.5805(7). Plaintiff appeals and argues that the proper statute of limitations is the residual six-year limitation period contained in MCL 600.5813; MSA 27A.5813.

The lower court held the following statute of

limitations, MCL 600.5805; MSA 27A.5805, controlling:

"Sec. 5805. No person may bring or maintain any action to recover damages for injuries to persons or property unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

\*   \*   \*

"(7) The period of limitations is *3 years* for all other actions to recover damages for *injuries to* persons and *property."* (Emphasis added.)

The application of this statute turns on whether plaintiff's action for conversion can be characterized as an "injury to property". This is a question of first impression in Michigan.

It is clear under the Uniform Commercial Code that when a check is paid on a forged indorsement, an action lies for conversion. In relevant part MCL 440.3419(1)(c); MSA 19.3419(1)(c) reads:

"(1) An instrument is converted when

\*   \*   \*

"(c) it is paid on a forged indorsement."

For further elaboration we look to Official UCC Comment 3 to MCL 440.3419; MSA 19.3419:

"3. Subsection (1)(c) is new. It adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion."

This definition is consistent with Michigan cases which define the tort of conversion as an "act of

dominion wrongfully exerted over another's personal property". *Nelson & Witt v Texas Co,* 256 Mich 65, 70; 239 NW 289 (1931), *Thoma v Tracy Motor Sales, Inc,* 360 Mich 434, 438; 104 NW2d 360 (1960), *Embrey v Weissman,* 74 Mich App 138, 143; 253 NW2d 687 (1977).

It is also clear that as the payee of the converted checks, Electric Apparatus is the rightful "owner" of the checks. See White and Summers, *Uniform Commercial Code* (1972), § 15-4, p 499. This concept of ownership is consistent with the characterization of a check as "property". As noted in Official UCC Comment 2 to MCL 440.3419; MSA 19.3419:

"A negotiable instrument is the property of the holder. It is a mercantile specialty which embodies rights against other parties, and a thing of value."

Although in a different setting, now Justice LEVIN has stated:

"When [the defendant] deliberately obliterated plaintiff's interest in the check, it would appear on the present record that it converted *property* belonging to the plaintiffs * * * ." (Emphasis supplied.)

*Warren Tool Company v Stephenson,* 11 Mich App 274, 298; 161 NW2d 133 (1968). This is consistent with the view of courts in other jurisdictions which have deemed checks to be "property". *Fabricon Products v United California Bank,* 264 Cal App 2d 113, 116; 70 Cal Rptr 50, 53 (1968).

Plaintiff argues that the three-year statute of limitations for injuries to persons or property is limited to cases where there is a physical or tangible injury, therefore, MCL 600.5805(7); MSA 27A.5805(7) does not apply in the present case

since conversion involves no physical or tangible injury. We disagree. Plaintiff's argument was expressly rejected in *Stringer v Sparrow Hospital,* 62 Mich App 696; 233 NW2d 698 (1975), *lv den,* 395 Mich 768 (1975). See also *Glowacki v Motor Wheel Corp,* 67 Mich App 448, 459–460; 241 NW2d 240 (1976), *Campos v General Motors Corp,* 71 Mich App 23, 26; 246 NW2d 352 (1976). In the above cited cases, various panels have recognized that the three-year statute applies to several types of "injuries" which involve no physical or tangible damage.

Although not controlling and although in the context of different statute of limitation schemes, courts in California, New York and Tennessee have adopted a three-year statute of limitations for conversion actions based on forged indorsements. *Fabricon Products, supra, Forman v First National Bank of Woodridge,* 66 Misc 2d 432; 320 NYS2d 646 (1971), *Gerber v Manufacturers Hanover Trust Co,* 64 Misc 2d 687; 315 NYS2d 601 (1970), *McConnico v Third National Bank in Nashville,* 499 SW2d 874, 891 (Tenn 1973).[1] A major purpose of the Uniform Commercial Code is to "make uniform the law among the various jurisdictions". MCL 440.1102(2)(c); MSA 19.1102(2)(c). In this day of sophisticated interstate commercial transactions, a major purpose of the Code would be undermined if identical conversion actions were subject to widely varying statutes of limitation from state to state.

We hold that when a check is converted, the payee-owner has suffered an injury to property within the meaning of MCL 600.5805(7); MSA 27A.5805(7).

---

[1] *But see Fuscellaro v Industrial National Corp,* 368 A2d 1227 (RI 1977).

We next turn to the issue raised in our brother's dissent. Initially we note that plaintiff never raised an implied warranty or implied contract theory at the trial court level. On appeal plaintiff concedes that the implied warranty of good title, MCL 440.4207; MSA 19.4207, does not run in favor of a payee. The implied warranty of good title runs from a customer or collecting bank who obtains payment or acceptance of an item or transfers an item for value to each *subsequent payor bank or other payor* who, in good faith, pays or accepts the item. Since here plaintiff is a payee and not a payor of the item, plaintiff has no cause of action based on this theory. Even if plaintiff's "implied contract" theory had been properly raised below and even assuming the theory has merit, we would still conclude plaintiff's action is barred by the three-year statute of limitations. Where, as here, there is no express contract or express promise and defendant's liability, if any, is implied by law, an action for injury to persons or property is controlled by the three-year statute regardless of whether the action is labeled as one in tort or implied contract. *Huhtala v Travelers Ins Co,* 401 Mich 118; 257 NW2d 640 (1977), *Case v Goren,* 43 Mich App 673, 682; 204 NW2d 767 (1972).

The only remaining issue is when the statute of limitations begins to run. We reject the plaintiff's argument that the cause of action accrues when the forgery or conversion is discovered. The statute begins to run when the checks are paid on a forged indorsement. MCL 440.3419(1)(c); MSA 19.3419(1)(c), *Gerber, supra, Fuscellaro, supra,* fn 1. Because plaintiff commenced its action more than three years after the checks were converted, the trial court was correct in holding the action is barred by MCL 600.5805(7); MSA 27A.5805(7).

The trial court's grant of accelerated judgment in favor of defendant is affirmed.

ALLEN, P. J., concurred.

M. J. KELLY, J. *(dissenting)*. I agree with the
majority that the three-year limitation upon ac-
tions to recover damages for "injury to property"
does not necessarily mean a physical injury to
tangible property, and a conversion of a check may
be considered an "injury to property" under the
statute. See *Side v Thompson*, 205 NYS2d 240, 241
(1960), *Bernstein v N V Nederlandsche-Ameri-
kaansche Stoomvaartmaatschappij*, 76 F Supp 335,
344 (DC NY, 1948), *Mintzer v Windsor Lamp Mfg
Co*, 175 Misc 551, 552; 23 NYS2d 990, 991 (1940).
See also *Money Corp v Draggoo*, 274 Mich 527; 265
NW 452 (1936). But see *Spangenberg v Spangen-
berg*, 123 Cal App 387; 11 P2d 408 (1932), *Mason v
Buck*, 99 Cal App 219; 278 P 461 (1929). I do not
agree, however, that the plaintiff's cause of action
·against defendant is necessarily limited to an ac-
tion based upon conversion.

Mr. Roth intercepted the checks payable to Elec-
tric Apparatus Company and deposited them in
the defendant bank for collection. Defendant, as
the collecting bank, returned the checks to the
drawee bank for collection and received the funds
which had been paid out to the order of Mr. and/
or Mrs. Roth.

The relationship of the parties in the instant
action is important in determining the rules of law
to apply. The plaintiff is the assignee and subrogee
of the payee of the checks which were misappro-
priated and is suing the collecting bank for the
value of these checks.

The Uniform Commercial Code provides that a
"collecting bank, who has in good faith and in
accordance with the reasonable commercial stan-
dards applicable to the business of such [collecting

bank] dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands". MCL 440.3419(3); MSA 19.3419(3). The code, therefore, limits an action in conversion against a collecting bank to circumstances when the collecting bank has not acted "in good faith and in accordance with reasonable commercial standards applicable to the business". That is a question which must be answered at the trial level. We are limited to reviewing what statute of limitation applies to determine if the trial court was correct in granting an accelerated judgment for the defendant.

Many cases in other jurisdictions support the majority in holding that plaintiff's conversion action is limited by a three-year statute of limitations. The majority seems to hold that plaintiff's only remedy is under a conversion theory. Such a view is too restrictive. Many jurisdictions allow a suit brought by the payee against a collecting bank based upon implied contract or other theories. See Anno: *Right of check owner to recover against one cashing it on forged or unauthorized indorsement and procuring payment by drawee,* 100 ALR2d 670. Under an implied contract theory the present action would be under a six-year statute of limitations. MCL 600.5813; MSA 27A.5813. *Abbott v Michigan State Industries,* 303 Mich 575; 6 NW2d 900 (1942). An action under an implied contract theory is implicit in MCL 400.3419(3); MSA 19.3419(3) since the collecting bank might be liable absent good faith and reasonable commercial standards "in conversion or otherwise". The phrase "or otherwise" indicates an implied contract action would be permissible.

The general rule is set forth in the following passage:

"Although there are a few scattered cases to the contrary, the general rule established by nearly all courts is that a bank or other corporation which, or an individual who, has obtained possession of a check upon an unauthorized or forged indorsement of the payee's signature, and has collected the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the check was obtained, and notwithstanding the payee's signature was forged by his employee or agent.

"The theory underlying the above rule has been expressed in various ways, all of which may be summed up in the statement that the possession of the check on the forged or unauthorized indorsement is wrongful, and when the money has been collected on the check, the bank, or other person or corporation, can be held as for money had and received and the statute of limitations governing actions on implied contracts is applicable, although there is authority to the contrary. Some courts hold that the act of the bank amounts to a conversion, and recovery may be had in a conversion action. Generally, the fact that the check in question did not reach the hands of the payee has been held to be immaterial." (Footnotes omitted.) 10 Am Jur 2d, Banks, § 632, pp 599–601. See also 9 CJS, Banks and Banking, § 357, p 763.

In a New York Supreme Court case, *Forman v First National Bank of Woodridge,* 66 Misc 2d 433; 320 NYS2d 648; 9 UCC Rep 285, 286 (1971), a check was issued on which the plaintiffs and a third corporate party were co-payees. Plaintiffs' endorsements were forged, and defendant collecting bank wrongfully disposed of the proceeds by crediting the account of the corporate payee. The court noted that the transaction predated the effective date of subdivision 3 of 3-419 of the UCC.

The defendant had relied on this provision in seeking immunity from liability for the collecting bank. The second ground urged by the defendant was that the action was in contract and should have been dismissed since it was not commenced within six years of its inception. The court found that the defendant was correct, and stated:

"This action is against a collecting bank as distinguished from a drawee bank. If the action were against the latter institution it would be in conversion and governed by a yet shorter statute (§ 3-419[1] [c] UCC). Where, however, the action is against a collecting bank that paid out proceeds of a negotiable instrument on forged endorsements, the action is in contract and governed by the six year statute. The Court of Appeals in *Henderson v Lincoln Rochester Trust Co,* 303 N.Y. 27, at 32 and 33, 100 N.E.2d 117 at 120, quotes 9 C.J.S. Banks and Banking § 357, p. 763 as follows:

" 'Where a collecting bank cashes a check on a forged instrument, a different principle applies; there the bank in collecting the check holds the proceeds for the payee, thereby establishing a privity in permitting the payee to maintain an action against such bank for the amount of the check, if he elects to ratify the collection.' The *Henderson* case is also authority for the position that such an action must be commenced within six years after the wrongful payment." 320 NYS2d at 649–650.

The rationale in the *Henderson* case was a sort of a common counts money had and received, and the opinion concludes:

"To put it in other words, a collecting bank is merely an agent for the purpose of collecting from the drawee bank the proceeds of the check delivered to it. When it takes the check for collection, it assents to the agency and becomes bound by the terms of the instrument received. Those terms include an obligation to pay the proceeds collected to the true payee owner *in the absence of a valid indorsement.* The moment the collect-

ing bank receives the proceeds it holds money belonging
to the owner of the check and becomes a debtor of such
owner and of no one else in the absence of a valid
indorsement." (Emphasis in original.) *Henderson v Lin-
coln Rochester Trust Co,* 303 NY 27, 33; 100 NE2d 117,
120 (1951).

In a Massachusetts case, *Stone & Webster Engi-
neering Corp v First National Bank & Trust Co,*
345 Mass 1; 184 NE2d 358; 99 ALR2d 628 (1962),
the drawer of checks that had never been deliv-
ered to the payee sought recovery of the amount of
the checks from a collecting bank which had
cashed the checks for the person who had forged
the payee's endorsement. The collecting bank had
received the amount of the check from the drawee
bank, which, in turn, had refused to recredit the
drawer's account. The Supreme Judicial Court of
Massachusetts held that the drawer had no right
of action against the collecting bank for money
had and received, conversion or negligence in cash-
ing the checks. The court noted:

"The plaintiff relies upon the Uniform Commercial
Code, G.L. c. 106, § 3-419, which provides,
" '(1) An instrument is converted when * * * (c) it is
paid on a forged indorsement.' This, however, could not
apply to the defendant, which is not a 'payor bank,'
defined in the Code, § 4-105 (b), as 'a bank by which an
item is payable as drawn or accepted.' See Am. Law
Inst Uniform Commercial Code, 1958 Official Text with
comments, § 4-105, comments 1-3; G.L. c. 106, §§ 4-401,
4-213, 3-102(b).
"A conversion provision of the Uniform Commercial
Code which might have some bearing on this case is § 3-
419(3). This section implicitly recognizes that, subject to
defences, including the one stated in it, a collecting
bank, defined in the Code, § 4-105(d), may be liable in
conversion. In the case at bar the forged indorsements

were 'wholly inoperative' as the signatures of the payee, Code §§ 3-404(1), 1-201(43), and equally so both as to the restrictive indorsements for deposit, see § 3-205(c), and as to the indorsement in blank, see § 3-204(2). When the forger transferred the checks to the collecting bank, no negotiation under § 3-202(1) occurred, because there was lacking the necessary indorsement of the payee. For the same reason, the collecting bank could not become a 'holder' as defined in § 1-201(20), and so could not become a holder in due course under § 3-202(1). Accordingly, we assume that the collecting bank may be liable in conversion to a proper party, subject to defences, including that in § 3-419(3). See *A. Blum Jr.'s Sons v Whipple,* 194 Mass 253, 255 [80 NE 501, 13 LRA NS, 211]. But there is no explicit provision in the Code purporting to determine to whom the collecting bank may be liable, and, consequently, the drawer's right to enforce such a liability must be found elsewhere. Therefore, we conclude that the case must be decided on our own law, which, on the issue we are discussing, has been left untouched by the Uniform Commercial Code in any specific section." (Footnote omitted, deletions in original.) 345 Mass at 5–6.

The court recognized that the authorities were hopelessly divided on the question of recovery under the theory of conversion. The court stated: "We think that the preferable view is that there is no right of action." 345 Mass at 7.

Absent a showing of bad faith and lack of reasonable commercial standards, since the defendant has paid over all the proceeds it should have no liability under a theory of conversion or any other theory. MCL 440.3419(3); MSA 19.3419(3), and Steinheimer, Practice Commentary, 22 MCLA 363,364, "As to the check, however, the defendant bank is in the position of a 'depository or collecting bank' which had paid over the proceeds, hence it should have no liability for conversion under section 3419(3). The provision in section 3419(3)

against liability 'in conversion or otherwise' serves to eliminate liability in assumpsit."

But the question of good faith and use of reasonable commercial standards has not been confronted by the trial court. Plaintiff should not be foreclosed from proceeding on a contract theory. We have abolished technical forms of pleading, GCR 1963, 12, and plaintiff is not limited to proceed with an action premised on "conversion", as long as it sets forth facts which entitled it to civil relief under some other theory. Of course the abolition of distinction in forms of action does not preclude an application of statutes of limitation based upon differences in forms of action. *Williamson v Columbia Gas and Electric Corp,* 110 F2d 15 (CA 3, 1939), *cert den,* 310 US 639; 60 S Ct 1087; 84 L Ed 1407 (1940). So while plaintiff is foreclosed on a conversion theory, it is not foreclosed from maintaining an action based upon a contract theory if the facts entitle it to recover under such a theory.

I would reverse and remand.